Good morning. May it please the court, my name is Francisco Leone and I am representing Anthony Mark Boscarino in this case. This case raises four issues regarding sentencing and one issue for fundamental error. Mr. Boscarino is convicted of a number of wire fraud cases, false statements, tax evasion, etc. And one of the issues involves whether there was obstruction of justice by Mr. Boscarino when he falsely declared to an SEC investigator that he did not have a prior felony conviction. That statement came in a deposition some 15 months before the indictment in this case was returned. And the court concluded that it was obstruction of justice and stated that it believed under Castro Ponce that those statements were material to the investigation of Mr. Boscarino. We contend that because it was 15 months beforehand and the investigation, the government didn't produce any evidence that the investigation was in fact obstructed by that. In fact, it's fair to say that at the time that he was being deposed, the government knew that he had a felony conviction. Well, wait, the elements don't suggest that that's the government's burden. The elements as you recounted, which I believe you recounted accurately, is that the statement must be false and it must be material. Not necessarily. It's got to be material because it's got to in some way impede the investigation. A statement can be false and not impede the investigation. You don't dispute that the statement was false? Yes. You do or do not? I do admit that it was a false statement. Okay, it is false. Your only question then is whether it was material to what? The investigation. To the investigation. And why wasn't it be material to an SEC investigator to know that somebody in front of him had been convicted of fraud? The case law requires that it materially, that it significantly impede the investigation. And that wasn't shown at all by the prosecution in this case. When we raised that objection, the government relied on a number of other things, including that he, referring to some other falsehoods that he made during the time that he was being investigated in that deposition, the fact that there were some documents that were destroyed, and the fact that there may have been some intimidation of witnesses. In Castro Ponce, this court held that because this enhancement for obstruction of justice is a serious offense, the district court must make findings with regard to each element of, in that case, perjury, essentially. And our contention is that if the government is going to rely on lying during a deposition or destruction of documents, it also has to meet those statutory elements, and the court has to make specific findings or express findings about them, because all of those things constitute or could constitute obstruction of justice. It's not enough to simply say, well, the defendant lied during the time of the investigation. Whether or not that constitutes obstruction of justice has to be found specifically, has to be proved by the prosecution, and has to be found specifically by the court. The same thing with destruction of documents. The government claimed that there were some documents that were destroyed, and that was a basis for obstruction of justice. The Supreme Court has held it's not just the destruction of documents. In fact, if the destruction of documents is pursuant to a file retention system or some other reason not related to corruptly trying to obstruct the investigation, then it can't be obstruction of justice, and it shouldn't be found to be so. In this instance, we don't have any findings to that effect, and so we contend that the court's reliance on Is it your understanding the district judge relied not only on the false statement to the SEC investigator, but also relied on the intimidating a witness? She says so during the hearing. She said that Okay. And was that improper? I don't think that it's improper, but I don't think it's supported by the facts to simply say, Well, there's other things that the defendant in fact, I think what the what the judge says is I'm relying also on the allegations made in the pleadings by the government in support of that finding that there was obstruction of justice. Our contention, however, is that if those are the obstruction of justice, if that's going to be a basis for obstruction of justice, there's got to be specific findings by the court with regard to the act and the intent of the defendant with regard to those acts in order to constitute obstruction of justice. Well, he did say it was material and it was willful. He made findings. He said that it was material and willful when he falsely stated that he did not have a prior conviction. Our contention is that the judge's finding of materiality is not supported because of the fact that that statement was made 15 months before the indictment in this case and there was no showing by the government that it significantly impeded the investigation in any way. Judge Jorgensen also referred to cumulative conduct and she said perhaps standing alone it wasn't enough, but when you put it with the other things, there's cumulative conduct. Well, and the problem with that is this, that Castroponso, which we rely on heavily, says that there's got to be some explicit findings by the court. It's not simply saying there's cumulative conduct and therefore you can find. What more did the court have to find? I mean, she addressed the elements. She addressed what she was finding. She said it was cumulative conduct. She referred to all of the various facts. She didn't discuss it in detail, but again, this didn't follow a trial. It was following. No, but it results in a two-level enhancement for my client and to simply say, I mean, that was the problem with Castroponso, that the defendant lied and this court. Well, your client lied, that you don't dispute that. No, I'm not disputing that, but there's got to be explicit findings that make it actually obstruction of justice and we cited in our briefs the reason why certain types of offenses, certain types of lying or destruction of documents or interfering with witnesses. Counsel, again, we're going to go back to where you started. I thought that the two elements of obstruction of justice is that it has to be a false statement and it has to be material. And that's why I say that it wasn't material. It's not apparent that it's material because there was no showing by the government that it significantly impeded the investigation. As I say, it happened a long time before the indictment actually occurred in this instance. I mean, the district court obviously thought that it did. She had some familiarity with the facts and the evidence and that's why we're asking this court to find otherwise. Counsel, your time is going quickly, so I just want to keep you on track if there's other things that you want to talk to us about. A couple of other things. I have asked the court, I did ask the court at the district court level for findings with regard to the number of victims. What happened was in this case that the court relied on the guidelines in effect at the time of the sentencing. Four months later approximately, there were substantial changes to the sentencing guidelines with regard to the number of victims and what is necessary to be proved as to those. We asked the court for a variance because we understood that we couldn't ask for a departure on that basis. But the court said, I'm not going to apply the guidelines as they're going to be in a few months. I'm going to apply them as they exist right now. And under that circumstance, the fact that there's over 250 victims in this case is adequate to find a six-level increase in the guideline calculation. There's a number of... Didn't she also find, didn't she say that even if I were to apply the new guidelines, I've still got 25, at least 25 people who've suffered significant financial hardship? She did say that and again... And it sounds like you're covered under both iterations of the guideline. It sounds like the judge was very conscientious in trying to give you the benefit of your argument even if she disagreed as to what applied and said, in the alternative, I think there's good evidence here of 25 plus. No, I agree she considered it. What I'm saying is that she didn't consider it correctly because what happened was that they brought an FBI agent in who said that she had reviewed some statements made by some of the victims. And she concluded on that basis that even under the proposed guidelines, that there was substantial financial hardship. But when she was cross-examined, she said she just drew her own conclusions based on the statements by these alleged victims. And we submit that that's not adequate proof. In fact, the proposed guidelines have a listing of the things that should be considered or should be inquired into by the court in order to determine whether there is substantial financial hardship. And that wasn't done and the agent admitted that she didn't use any type of criteria. She just looked at the statements, concluded this shows substantial financial hardship, and the court said that's fine with me. What we're saying is that that is not sufficient evidence. It's not, it doesn't allow this court to review whether or not that meets that standard. All right, let's suppose that you're right on that. That would get us back to the first problem is that she applied the guidelines in effect at the time that she sentenced him. Yes. So what's wrong with that? Well, there's, one of the issues that I've raised is that she should have applied the mass marketing guideline because there's a little bit of tension here between one of the guidelines that says if there's 10 victims or more in it, it involves mass marketing. I want to keep you focused on the question that I had. What's wrong with applying the guideline in effect at the time that she sentences your client, even if we all know that there might be some changes coming? I don't think there's anything wrong with applying the guideline, but I think the court gave inadequate weight to the fact that the guidelines by the sentencing commission indicates the direction that the sentencing commission believes that the guidelines ought to be interpreted. We contend that it's a clarification, so it should be applied retroactively. The clarification is this. The guidelines, according to the sentencing commission, is that there's too much focus on the number of witnesses. There should also be some consideration to the extent of substantial financial hardship suffered by victims, and then you consider the number of people that might have been affected to the degree that there was substantial financial hardship. The court didn't seem to do that. The court looked at it. She said, okay, I'm thinking about all of that, but what I'm going to do is apply the 250 victim guideline, bump it up six levels, and you can make what you want to of the record, I think, with regard to substantial financial hardship. And what we're saying is that the court should have given more weight to the fact that the sentencing commission indicated that just the number of victims alone is not an appropriate or it shouldn't be the only consideration. There's got to be consideration of other factors. Counsel, you're over your time, but I do want to hear if there's anything else that the court needs to hear this morning. It hasn't been. Judge, yes, with regard to the seizure of assets, the last claim that we make in our argument. The indictment, and back in 2010 when this case was indicted, certainly before Luis versus the United States, there was a wholesale seizure of assets that Mr. Boscorino had available to him, and part of the reason for the seizure of assets was that the case law at that time allowed the government to seize all assets, even assets that were untainted. Now, I concede that there's not very much of a factual basis or a record on this matter, but to me the case law at that time allowed the government to seize all assets, even assets that were untainted. So why isn't it better reserved for habeas? Well, quite honestly, Judge, this is something that my client feels very strongly about. Well, he may feel very strongly, but if the court doesn't have a record here, how can we possibly decide this? Isn't that what habeas is for? Yes, but I think the record clearly shows that. He would have to bring an IAC claim, wouldn't he? Wouldn't he have to bring a claim of ineffective assistance of counsel? Because this is all on, even before us, it's now on plain error review, right? This was never really raised before the district court. He might have to do that. I haven't fully explored that. But that's oftentimes where mistakes at this place, at this point in the trial, are remedied, is in a further inquiry on habeas. The reason I bring it up here is because the indictment, the forfeiture allegation, includes not just the tainted assets, it includes even substitute assets, even other assets. And we can tell that from the record? I think you can from the wording of the indictment. It includes not just the material. In fact, there's specific property that's named, but then it also alleges that other properties. How can we tell that this is untainted? Well, that's the issue, I suppose. And that's why I've asked for remand, to develop the record more fully. All right. Thank you, counsel. Thank you. That's it from the government. Good morning, Your Honor. May it please the Court? I'm Chris Cabanillas from the District of Arizona. We'd respectfully ask this Court to affirm the sentence, and just addressing the issues as the defendant raised them. First, as this Court noted, there are multiple grounds upon which the District Court found that the obstruction of justice enhancement was warranted. There was the threatening of witnesses, the destruction of the evidence at the defendant's direction to Mr. Diaz, who destroyed a bunch of joint venture agreements. There's also a paragraph I wanted to mention when it comes to joint venture agreements. And that Diaz point, which I had intended to put in the brief there, but it's at SCR 129, you're going to see a paragraph describing that as well. So I wanted to mention that first before moving to obstruction, because again, as Judge Bybee noted, the Court found that there were multiple factors. So although the defendant spends a great deal of time talking about the false statement, that's just one part of the obstruction enhancement. It can be affirmed for the other reasons anyway. But as far as the obstruction, I just wanted to mention one distinction that's critical here. Is that this statement was made under oath. And because it was made under oath, it constitutes perjury. And that puts it in the world of Dunnegan and Castro-Ponce. And the defense and the government agree on those three things that the District Court needs to find under Dunnegan and Castro-Ponce, which is false statement that was material and willful. And each of those three findings the District Court made in this case, they're found at ER 569 to 572, quote, I'm going to find this plus two is an appropriate enhancement based on the statements made to the investigator, which were one, false. I think they were material. Then she goes on to say, you know, it has to be what we call perjury. So the Court finds it was done with willful intent. So in that respect, it differs from Castro-Ponce, because in Castro-Ponce, as this Court knows, the Court did not make all three findings. As far as that point the defendant makes about the significant hindrance, I went back and looked at Solano-Godinez again, and I was reminded that even Solano-Godinez recognizes that statements made under oath are different and don't require that significant hindrance. And you'll find that at Head Note 12, page 964, and towards the bottom there's a quote, Actual significant hindrance to the investigation is necessary when, in that case it was false aliases, but a false statement is given, not under oath during the investigation. So when it's under oath, then we're in the world of Dunnegan. You only have to show those three things, and you do not have to show significant hindrance. And I went back and I looked at the guideline again, too, and actually that quote that I just gave you that part about, not under oath, that's also in Application Note 5, capital B, of this same guideline application note description. So again, I think that the obstruction enhancement was properly found. Also, the District Court relied on some statements, and as the Court already has observed at the change of plea transcript, where the defendant admitted various things that shows that he knew it was material and that he was willful and everything else. With that, I think I'd like to move, unless the Court has any more questions on that point, I'll move briefly to the comment dealing with the six-level enhancement for victims. As this Court knows, and as the government has advocated, the government believes the District Court correctly applied the guidelines in effect at the time of sentencing. That is this Court's rule, that is the law that applies. So we think that the inquiry ends once you find there are more than 250 victims. And the defense does not meaningfully disagree that there were. Obviously, here were close to 1,700 victims that the defendant defrauded through his various sports gambling schemes. So if you apply the guideline in effect at the time, we're done. But even if you want to move to the question of that November 2015 guideline, and you may recall the sentencing in this case was in July of 2015, so several months before, the Court covered its bases. As Judge Bybee noted, I would concur with the observation the Court was very diligent here. The government also, just to cover its bases, presented this testimony and evidence to support that we had at least 25 victims that were substantially affected or had substantial financial harm. And there is, I don't want to restate it, but there's a whole page in the government's answering brief where we discuss some of the victim letters and some of the things that were summarized. You can also find a summary on S.E.R. 271 to 275 from the government's sentencing memorandum below. What kind of proof does the government have to show at this point? What's the burden on the government in a sentencing hearing about the substantial financial harm of the 25? I respectfully submit that once the Court finds there is substantial financial harm, that that's sufficient. Right, but can the Court just say, I find it because I believe, what, the PSR? No, I mean, I think that... We haven't had a trial, and that sort of complicates things. And I'm not sure if, I think that the government argued below that it should be a preponderance standard here. I mean, that would be the first thing, would it be preponderance or clear and convincing, but under any standard. But do you have to have at least 26 named people? You know, I don't know if we've drilled down that deep here in this Court, but if we did, we do. If you had a trial, you might have had a half a dozen or maybe a dozen people paraded, but you might not have had 26 people put on the stand in the course of a trial. So that raises some interesting questions as to what you've got to show in order to show substantial financial harm. And with respect to some of these folks, the financial harm was only $500. But they were fairly impecunious folks, and so they said, it makes a difference, I'm going to lose my apartment, I don't have a house. Yes, and I would respectfully submit that it's not the amount of money that would govern that. I really do believe that there is a certain amount that also depends on the impact with this individual. $500 may not sound like a lot to some people, but it's a great deal to others. And that's a footnote I dropped in my brief. But also, we did have, and there was an effort made, to lay out each victim. And that's in Exhibit 18 at SER 303 to 306. There was a chart that laid out each victim and described how much money they lost, etc. And that's also described in the answering brief 41 to 42. And ultimately, the Court's finding that there was significant financial harm, I would submit as a factual finding that this Court could only reverse if it was clearly erroneous. And I respectfully submit on this record it was not clearly erroneous. Could we find that it doesn't rise to the level of preponderance of the evidence? I don't think, under this record, Your Honor. I think with the testimony and the exhibits, the government well beyond preponderance here. I mean, it was taken very seriously. So, obviously, defense counsel objected, but did they put in any contrary evidence into the record? You know, Your Honor, I guess I'm focusing mostly on what we had done. I'd have to look back at that. I'm sorry, I don't know the answer right now. I just remember that there was, I know there was cross-examination of the government's witnesses, and I suspect Mr. Leon would say that that is contrary evidence, arguably. But ultimately, that's where the District Court becomes the fact-finder, and that's where we have a court make that finding that there's been substantial financial harm, that that is a finding that shouldn't be reversed unless clearly erroneous. And on this record, it was not. Unless the Court has any more questions on that point, just with it comes to the forfeiture, I would submit that that's been waived. Again, the defendant stipulated below that he was not contesting the order of forfeiture. And also, I think this Court asked whether or not the avenue would be habeas. I'm not sure, other than the bottom line is he does not have the ability on direct appeal after having stipulated to the forfeiture ruling and after having not made any record below about any kind of an impact under Luis that there's no plain error even if it's reviewed. And I would also note, I don't think that he would be successful on a habeas if he was to go down that road. And I just want to at least mention even under Luis, he'd have to show some pretrial restraint of quote, legitimate, untainted assets. And we would submit that on the current record the District Court's forfeiture is well-supported to show that these were not legitimate assets. With that, unless the Court has any more questions, I'd ask the Court to affirm. Thank you, Ms. Cavanias. Counsel, we took up we gave you substantial more time but I will allow you 30 seconds if you think that there's something that needs to be responded to. Okay. Thank you very much, Mr. Leone. We thank both counsel for the argument. United States v. Bosco Reno is submitted.
judges: Wardlaw, Bybee, Illston